## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

CELESTINA MEJIA; SANTOS MIGUEL;
ONEIDA GOTAY; PAULA FIGUEROA;
SUYAPA MOREIRA CAYETANO; ELSY
SANTOS; GENESIS RUIZ; JUAN DOLMO;
APOLONIA REYES; ROSA PINALES; ALBA
FLORES; FRANCISCA MEDINA; DIANA
ARRIOLA; LIDIA GOTAY; LAURA
LABORIEL; DUNIA FLORES; MARGARITA
BENEDITH; BEBERLIN FLORES; and KEIDY
MARIN;

               Plaintiffs,

            -against-

AVONDALE CARE GROUP, LLC d/b/a
AVONDALE CARE GROUP; PETER
CARROLL; and LORNA GRAZIO;

               Defendants.

Case No.   1:20-cv-02884

**COMPLAINT**

Plaintiffs Celestina Mejia, Santos Miguel, Oneida Gotay, Paula Figueroa, Suyapa Moreira Cayetano, Elsy Santos, Genesis Ruiz, Juan Dolmo, Apolonia Reyes, Rosa Pinales, Alba Flores, Francisca Medina, Diana Arriola, Lidia Gotay, Laura Laboriel, Dunia Flores, Margarita Benedith, Beberlin Flores, and Keidy Marin (collectively, "Plaintiffs"), by their undersigned attorneys, bring this action under the federal and state labor laws to recover Plaintiffs' lawful wages arising from their employment with Avondale Care Group, LLC d/b/a Avondale Care Group, Peter Carroll, and Lorna Grazio (collectively, "Defendants"), plus liquidated damages, interest, notice and recordkeeping damages, attorneys' fees, and costs of this action.

## PRELIMINARY STATEMENT

1.      Plaintiffs are current and former employees of Defendant Avondale Care Group, LLC, which did business as Avondale Care Group (hereinafter referred to as "Avondale"); Peter

Carroll (hereinafter referred to as "Carroll" or "Defendant Carroll"); and Lorna Grazio (hereinafter referred to as "Grazio" or "Defendant Grazio") (collectively, "Defendants").

2.      Defendants employed Plaintiffs as home health attendants, to care for sick and/or elderly homebound patients.

3.      Defendants have performed related activities through unified operations or common control since at least March 20, 2014,[1] with the common purpose of running a for-profit company that provides home health care to seniors and/or chronically infirmed patients.

4.      Plaintiffs were all employed by Defendants as home health attendants. Defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by: (a) failing to pay for all hours worked during Plaintiffs' 24-hour shifts, at their regular rate or otherwise; (b) failing to pay lawful overtime compensation for each hour that Plaintiffs worked exceeding forty per week; (c) failing to pay the lawful minimum wage for each hour that Plaintiffs worked; (d) failing to pay lawful spread-of-hours compensation to Plaintiffs; (e) failing to provide Plaintiffs with a correct wage notice upon hiring, as required by law; and (f) failing to provide Plaintiffs with accurate wage statements. Additionally, upon information and belief, Defendants breached the contracts that they entered into with New York State and New York City, which required them to pay Plaintiffs, as third-party beneficiaries, certain wages and benefits at fair or parity rates, and Defendants were unjustly enriched because of those breaches.

5.      Accordingly, as stated herein, Plaintiffs bring claims for violations of the FLSA and NYLL, as well as breach of contract and unjust enrichment, and seek compensatory and liquidated damages, notice and recordkeeping damages, and interest, as well as attorneys' fees and costs associated with this action.

---

[1] State of New York Executive Order No. 202.8, issued on March 20, 2020, tolled the statute of limitations for the commencement of any New York State statutory causes of action until April 19, 2020.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to the FLSA, 29 U.S.C. § 201 et seq., 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331.

7.      This Court has supplemental jurisdiction over the New York State claims pursuant 28 U.S.C. § 1367(a).

8.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because Avondale's headquarters is located within the District and a substantial part of the events giving rise to the claims occurred in this District.

## PARTIES

### PLAINTIFFS

9.      Plaintiff Celestina Mejia is a Bronx County resident and a former employee of Defendants.

10.     Plaintiff Santos Miguel is a Bronx County resident and an employee of Defendants.

11.     Plaintiff Oneida Gotay is a Bronx County resident and a former employee of Defendants.

12.     Plaintiff Paula Figueroa is a Bronx County resident and a former employee of Defendants.

13.     Plaintiff Suyapa Moreira Cayetano is a New York County resident and a former employee of Defendants.

14.     Plaintiff Elsy Santos is a Bronx County resident and a former employee of Defendants.

15.     Plaintiff Genesis Ruiz is a New York County resident and a former employee of Defendants.

16.     Plaintiff Juan Dolmo is a Bronx County resident and a former employee of Defendants.

17.     Plaintiff Apolonia Reyes is a Bronx County resident and a former employee of Defendants.

18.     Plaintiff Rosa Pinales is a Bronx County resident and an employee of Defendants.

19.     Plaintiff Alba Flores is a Bronx County resident and a former employee of Defendants.

20.     Plaintiff Francisca Medina is a Bronx County resident and a former employee of Defendants.

21.     Plaintiff Diana Arriola is a Bronx County resident and a former employee of Defendants.

22.     Plaintiff Lidia Gotay is a Bronx County resident and an employee of Defendants.

23.     Plaintiff Laura Laboriel is a Bronx County resident and an employee of Defendants.

24.     Plaintiff Dunia Flores is a Bronx County resident and a former employee of Defendants.

25.     Plaintiff Margarita Benedith is a Bronx County resident and a former employee of Defendants.

26.     Plaintiff Beberlin Flores is a Bronx County resident and a former employee of Defendants.

DEFENDANTS

Avondale Care Group, LLC

27.    Defendant Avondale is a "certified home health agency," "long term home health care program," "managed care plan" and/or "license home care services agency" that furnishes "home care aid" within the meaning of NY Public Health Law § 3614-c.

28.    Defendant Avondale Care Group, LLC is an active limited liability company organized under the laws of New York State with offices at 505 8th Avenue, Suite 200, New York, New York 10018, and conducts business under the name Avondale Care Group.

29.    From at least March 20, 2014 through present, Avondale has engaged in a large-scale business to provide, upon information and belief, approximately 1200 home health aides to the homes of sick and/or elderly patients throughout New York City and Nassau County.

30.    From at least March 20, 2014 through present, Avondale employed Plaintiffs as home health aides for their sick and/or elderly patients. Avondale hired Plaintiffs, set Plaintiffs' rate of pay, had the power to fire Plaintiffs, and oversaw all of Plaintiffs' job duties.

31.    Upon information and belief, from at least March 20, 2014 to the present, Avondale was an enterprise engaged in interstate commerce within the meaning of the FLSA in that it:

    a.   had employees engaged in commerce or in the production of goods for commerce, or who handled, sold or otherwise worked on goods or materials that were moved in or produced for commerce by any person; and

    b.   had an annual gross volume of sales of not less than $500,000.

Peter Carroll

32.     Defendant Peter Carroll is the president, co-owner, member, and business manager of Avondale.

33.     At all times relevant, Defendant Peter Carroll, in partnership with Defendant Lorna Grazio, has overseen the operations of the company as a whole.

34.     Upon information and belief, Defendant Peter Carroll, in his role with Avondale and the decisions that that role entailed, directly affected the nature or conditions of Plaintiffs' employment.

35.     Upon information and belief, Defendant Peter Carroll, an executive of Avondale, exercised operational control over Plaintiffs' employment.

36.     Upon information and belief, under the "economic realities" of Plaintiffs' employment, Defendant Peter Carroll was Plaintiffs' employer under the FLSA and NYLL.

37.     At all times relevant, Defendant Peter Carroll has had the authority to hire and fire Avondale's home health aides, including Plaintiffs.

38.     At all times relevant, Defendant Peter Carroll had the authority to determine the rate of pay of Avondale's home health aides, including Plaintiffs.

39.     Upon information and belief, Defendant Peter Carroll, exercised his authority to determine the pay rates and compensation structure of Avondale's home health aides, including Plaintiffs.

Lorna Grazio

40.     Defendant Lorna Grazio is chief executive officer, co-owner, and staff manager of Avondale.

41.     At all times relevant, Defendant Lorna Grazio, in partnership with Defendant Peter Carroll, has overseen the operations of the company as a whole.

42.     Upon information and belief, Defendant Lorna Grazio, in her role with Avondale and the decisions that that role entailed, directly affected the nature or conditions of Plaintiffs' employment.

43.     Upon information and belief, Defendant Lorna Grazio, an executive of Avondale, exercised operational control over Plaintiffs' employment.

44.     Upon information and belief, under the "economic realities" of Plaintiffs' employment, Defendant Lorna Grazio was Plaintiffs' employer under the FLSA and NYLL.

45.     At all times relevant, Defendant Lorna Grazio has had the authority to hire and fire Avondale's home health aides, including Plaintiffs.

46.     At all times relevant, Defendant Lorna Grazio has had the authority to set the rate of pay for Avondale's home health aides, including Plaintiffs.

47.     Upon information and belief, Defendant Lorna Grazio exercised her authority to determine the pay rates and compensation structure of Avondale's home health aides, including Plaintiffs.

48.     Defendant Lorna Grazio oversees the clinical operations of Avondale and provides operational and staff direction.

49.     Upon information and belief, Defendant Lorna Grazio oversees and is involved in the training of Avondale's home health aides, including Plaintiffs.

## STATEMENT OF FACTS

50.     Plaintiffs were, at all relevant times, home health care attendants employed in New York by Defendants to provide personal home health care and assistance to Defendants' clients in those clients' homes.

51.     While employed by Defendants, Plaintiffs provided services to homebound ailing and/or elderly patients, including, but not limited to, personal care services and housekeeping, such as assistance with dressing, bathing, escorting patients to the bathroom, personal grooming, cooking, serving food and feeding, changing diapers, cleaning, taking out garbage, and escorting patients to the doctor, among other things, as part of their principal duties.

52.     When Plaintiffs worked 24-hour shifts, they were required to stay overnight at the residences of Defendants' clients, and needed to be ready and available to provide assistance to Defendants' clients as needed.

53.     When Plaintiffs worked 24-hour shifts, they were only paid for approximately 13 hours of those 24-hour shifts. Plaintiffs were not paid any hourly rate for the other 11 hours worked.

54.     All 24 hours of Plaintiffs' 24-hour shifts were compensable under the FLSA and/or NYLL.

55.     Because Plaintiffs were only paid 13 hours of their 24-hour shifts, their hourly rate routinely dropped below the applicable New York State and/or New York City minimum wage rate.

56.     Because Defendants' clients were often elderly and suffering from various health and mental ailments, they required constant care and Plaintiffs did not get an opportunity to sleep without any interruption.

57.     Plaintiffs were not permitted to leave the Defendants' clients' residences during their shifts.

58.     Defendants required Plaintiffs to be on the premises of Defendants' clients for 24 hours during any given 24-hour shift, which was for the benefit of the Defendants.

59.     During their 24-hour shifts, Plaintiffs did not receive eight hours of sleep time, or five hours of uninterrupted sleep.

60.     Defendants did not provide Plaintiffs with adequate sleeping facilities.

61.     Plaintiffs did not get a one-hour break for each of three meals per day.

62.     Plaintiffs were often forced to combine their meal times with the meal times of the Defendants' clients because they needed feeding assistance and/or constant supervision.

63.     When Plaintiffs worked 24-hour shifts, they were not paid overtime wages at the applicable overtime hourly rate for all hours worked in excess of 40 hours in any given week.

64.     Plaintiffs did not have an enforceable agreement with Defendants to exclude sleep and/or meal time from compensable time.

65.     Plaintiffs typically worked 8-, 12-, or 24-hour shifts for Defendants.

66.      Plaintiffs never received the "spread-of-hours" premium of one additional hour at the minimum wage rate for the days in which they worked 10 or more hours or days in which they worked a split shift.

67.     Upon information and belief, Defendants required and continue to require Plaintiffs to attend home health training sessions. These training sessions each last approximately 8 hours.

68.     Upon information and belief, Defendants do not pay Plaintiffs for all time spent in these mandatory training sessions.

69.     Plaintiffs maintained their own residences, and did not "live in" the homes of Defendants' clients or in the home of their employer.

70.     Plaintiffs were not exempt companions of Defendants' clients.

71.     Upon information and belief, Defendants entered into contract(s) with government agencies which called for Defendants to pay Plaintiffs prevailing rates of wages and benefits as required by the New York Home Care Worker Wage Parity Act, NY Public Health Law § 3614-c, and the Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16). These contracts were made with an intent to benefit Plaintiffs.

72.     Upon information and belief, the schedule of prevailing rates of wages and benefits to be paid all workers furnishing labor pursuant to the contracts was included in and formed a part of the contract(s).

73.     Plaintiffs were intended third-party beneficiaries of these contracts for prevailing wages and benefits.

74.     Upon information and belief, from at least March 20, 2014, Plaintiffs furnished labor to Defendants in furtherance of Defendants' performance of the contract(s). Nevertheless, Defendants willfully paid Plaintiffs less than the prevailing rates of wages and benefits to which Plaintiffs were entitled.

75.     Upon information and belief, the agreement to pay Plaintiffs the prevailing rates of wages and benefits as required by NY Public Health Law § 3614-c was made for the benefit of Plaintiffs.

76.     Upon information and belief, Defendants made the required certifications to government agencies concerning their compliance with the wage provisions of the New York

Home Care Worker Wage Parity Act, NY Public Health Law § 3614-c, and Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16).

77.     Upon information and belief, from at least March 20, 2014, Plaintiffs furnished labor to Defendants in furtherance of its performance of the City Service Contract(s).

78.     Upon information and belief, Defendants willfully paid Plaintiffs less than the rates of wages and benefits to which Plaintiffs were entitled.

79.     Defendants' actions as described herein were intentional and not made in good faith.

80.     Plaintiffs are "Home Care Aides" within the meaning of NY Public Health Law § 3614-c.

81.     Upon information and belief, Defendants breached their obligations to pay Plaintiffs all the wages they were due under the New York Home Care Worker Wage Parity Act, NY Public Health Law § 3614-c, and Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16) by failing to pay Plaintiffs any wages for hours they worked. As a result, Plaintiffs have been injured.

82.     As intended third party beneficiaries of Defendants' contracts with government agencies to pay wages pursuant to the New York Home Care Worker Wage Parity Act, NY Public Health Law § 3614-c, and Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16), Plaintiffs are entitled to relief for the breach of these contractual obligations.

83.     Upon information and belief, Defendants have been unjustly enriched at the expense of Plaintiffs by failing to pay Plaintiffs the wages due to them under the New York Home Care Worker Wage Parity Act, NY Public Health Law § 3614-c, and Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16).

84.     Defendants accepted the benefits of the work Plaintiffs performed at Plaintiffs' expense, and it is inequitable for Defendants to reap the benefits of Plaintiffs' labor without paying all wages due under the New York Home Care Worker Wage Parity Act, NY Public Health Law § 3614-c, and Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16).

Celestina Mejia

85.     Plaintiff Celestina Mejia worked for Defendants as a home attendant from approximately 2013 through on or about September 10, 2019.

86.     While employed by Defendants, Plaintiff Celestina Mejia generally worked more than 40 hours per week. From at least March 20, 2014 until about June 2017, Plaintiff Celestina Mejia generally worked about four 24-hour shifts per week and an additional 8-hour shift per week, amounting to a total of about 104 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week. From about June 2017 until on or about October 5, 2017, Plaintiff Celestina Mejia did not work for Defendants. From approximately October 5, 2017 until approximately September 10, 2019, Plaintiff Celestina Mejia generally worked four or five 24-hour shifts, though sometimes more, per week, amounting to a total of about 96 to 120 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week.

87.     For example, from September 7, 2014 to September 13, 2014, Plaintiff Celestina Mejia worked four 24-hour shifts and an additional 8-hour shift for a total of 104 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week; and from September 16, 2018 to September 22,

12

2018, Plaintiff Celestina Mejia worked five 24-hour shifts for a total of 120 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week.

88.    Defendants failed to provide Plaintiff Celestina Mejia with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

89.    Throughout Plaintiff Celestina Mejia's employment with Avondale, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Santos Miguel

90.    Plaintiff Santos Miguel began working for Defendants as a home attendant in approximately 2013 and continues working for Defendants.

91.    While employed by Defendants, Plaintiff Santos Miguel generally worked more than 40 hours per week. From at least March 20, 2014 until about January 2015 Plaintiff Santos Miguel worked four to five 24-hour shifts per week, amounting to a total of 96 to 120 hours per week, but Defendants failed to pay him overtime at a rate of one and one-half his regular rate for all hours worked in excess of 40 each week. From about January 2015 until about January 2016, Plaintiff Santos Miguel worked three 24-hour shifts per week, amounting to a total of 72 hours per week, but Defendants failed to pay him overtime at a rate of one and one-half his regular rate for all hours worked in excess of 40 each week. From about January 2016 until on or about

13

November 16, 2016, Plaintiff Santos Miguel worked four 24-hour shifts per week, amounting to

a total of about 96 hours per week, but Defendants failed to pay him overtime at a rate of one and

one-half his regular rate for all hours worked in excess of 40 each week. Plaintiff Santos Miguel

did not work for Avondale from about November 16, 2016 until about January 2017. From about

January 2017 until about April 2018, Plaintiff Santos Miguel worked on and off with

Defendants, for about half of that period, generally working about three or four 24 shifts per

week, amounting to a total of about 72 to 96 hours per week for the time that he worked with

Defendants, but Defendants failed to pay him overtime at a rate of one and one-half his regular

rate for all hours worked in excess of 40 each week. From about April 2018 until about June

2019, Plaintiff Santos Miguel generally worked three or four 24-hour shifts per week, amounting

to a total of about 72 to 96 hours per week, but Defendants failed to pay him overtime at a rate of

one and one-half his regular rate for all hours worked in excess of 40 each week. From about

November 2019 until on or about December 15, 2019, Plaintiff Santos Miguel generally worked

about three 24-hour shifts per week, amounting to a total of about 72 hours per week, but

Defendants failed to pay him overtime at a rate of one and one-half his regular rate for all hours

worked in excess of 40 each week. From on or about December 15, 2019 until on or about

January 19, 2020, Plaintiff Santos Miguel worked five or six 24-hour shifts per week, amounting

to a total of 120 or 144 hours per week, but Defendants failed to pay him overtime at a rate of

one and one-half his regular rate for all hours worked in excess of 40 each week. From on or

about January 19, 2020 to the present, Plaintiff Santos Miguel has worked three or four 24-hour

shifts per week, along with sporadic 12-hour shifts, amounting to a total of 72, 84, 96, or 108

hours per week, but Defendants failed to pay him overtime at a rate of one and one-half his

regular rate for all hours worked in excess of 40 each week.

92.     For example, from March 5, 2017 to March 11, 2017, Plaintiff Santos Miguel worked four 24-hour shifts for a total of 96 hours worked that week, but Defendants failed to pay him overtime at a rate of one and one-half his regular rate for all hours worked in excess of 40 that week; from May 6, 2018 to May 12, 2018, Plaintiff Santos Miguel worked four 24-hour shifts for a total of 96 hours worked that week, but Defendants failed to pay him overtime at a rate of one and one-half his regular rate for all hours worked in excess of 40 that week; from December 1, 2019 to December 7, 2019, Plaintiff Santos Miguel worked three 24-hour shifts for a total of 72 hours worked that week, but Defendants failed to pay him overtime at a rate of one and one-half his regular rate for all hours worked in excess of 40 that week; from December 15, 2019 to December 21, 2019, Plaintiff Santos Miguel worked five 24-hour shifts for a total of 120 hours worked that week, but Defendants failed to pay him overtime at a rate of one and one-half his regular rate for all hours worked in excess of 40 that week; and from January 19, 2020 to January 25, 2020, Plaintiff Santos Miguel worked three 24-hour shifts for a total of 72 hours worked that week, but Defendants failed to pay him overtime at a rate of one and one-half his regular rate for all hours worked in excess of 40 that week.

93.     Throughout Plaintiff Santos Miguel's employment with Avondale, Defendants failed to furnish him with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Oneida Gotay

94.     Plaintiff Oneida Gotay worked for Defendants as a home attendant from approximately 2013 through about December 2017.

95.     While employed by Defendants, Plaintiff Oneida Gotay generally worked more than 40 hours per week. From about March 2014 until about April 2016, Plaintiff Oneida Gotay generally worked five 24-hour shifts per week, amounting to a total of about 120 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week. From about April 2016 until about July 2016, Plaintiff Oneida Gotay worked four 24-hour shifts per week, amounting to a total of 96 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week. From July 2016 until about July 2017, Plaintiff Oneida Gotay generally worked about four 12-hour shifts per week, amounting to a total of about 48 hours per week. On at least one occasion during that time, Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week. From about July 2017 until about December 2017, Plaintiff Oneida Gotay generally worked about five 12-hour shifts per week, amounting to a total of about 60 hours per week. Upon information and belief, during that period, Defendants failed to pay her overtime at a rate of one and one-half her regular rate for at least some of the hours that she worked in excess of 40 each week.

96.     For example, from April 13, 2014 to April 19, 2014, Plaintiff Oneida Gotay worked five 24-hour shifts for a total of 120 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week; and from December 17, 2016 to December 23, 2016, Plaintiff Oneida Gotay worked four 12-hour shifts for a total of 48 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week.

97.    Plaintiff Oneida Gotay was not paid at all for about her last 12 hours of work with Defendants, in approximately December 2017.

98.    Defendants failed to provide Plaintiff Oneida Gotay with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

99.    Throughout Plaintiff Oneida Gotay's employment with Avondale, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Paula Figueroa

100.    Plaintiff Paula Figueroa has worked for Defendants as a home attendant from approximately May 1, 2013 to the present.

101.    While employed by Defendants, Plaintiff Paula Figueroa has generally worked between three and five 24-hour shifts each week,  amounting to a total of 72 to 120 hours per week, but Defendants failed to pay her overtime at one and one-half times her regular rate for all hours worked in excess of 40 each week.

102.    From on or about May 1, 2013 to on or about December 31, 2013, Plaintiff Paula Figueroa worked five 24-hour shifts each week for Defendants, totaling 120 hours worked each week, but Defendants failed to pay her at one and one-half times her regular rate for all hours worked in excess of 40 each week. From on or about January 1, 2014 to on or about November 30, 2019, Plaintiff Paula Figueroa worked four 24-hour shifts each week for Defendants, totaling

17

96 hours worked each week, but Defendants failed to pay her at one and one-half times her regular rate for all hours worked in excess of 40 each week. From on or about December 1, 2019 to on or about December 31, 2019, Plaintiff Paula Figueroa did not work for Defendants. From on or about January 1, 2020 to present, Plaintiff Paula Figueroa worked three 24-hour shifts each week for Defendants, totaling 72 hours each week, but Defendants failed to pay her at one and one-half times her regular rate for all hours worked.

103.    Defendants failed to provide Plaintiff Paula Figueroa with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

104.    Throughout Plaintiff Paula Figueroa's employment with Defendants, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Suyapa Moreira Cayetano

105.    Plaintiff Suyapa Moreira Cayetano worked for Defendants as a home attendant from approximately December 2016 to approximately December 2017.

106.    While employed by Defendants, Plaintiff Suyapa Moreira Cayetano generally worked more than 40 hours per week. Plaintiff Suyapa Moreira Cayetano generally worked about three 24-hour shifts per week, amounting to a total of about 72 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week.

107.    For example, from December 3, 2017 to December 9, 2017, Plaintiff Suyapa

Moreira Cayetano worked three 24-hour shifts for a total of 72 hours worked that week, but

Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours

worked in excess of 40 that week.

108.    Defendants failed to provide Plaintiff Suyapa Moreira Cayetano with a notice of

pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates

of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other

information required to be included pursuant to NYLL § 195(1).

109.    Throughout Plaintiff Suyapa Moreira Cayetano's employment with Avondale,

Defendants failed to furnish her with a statement with every payment of wages that listed the

regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours

worked, the number of overtime hours worked, and other information required to be included

pursuant to NYLL § 195(3).

Elsy Santos

110.    Plaintiff Elsy Santos worked for Defendants as a home attendant from

approximately 2013 to approximately January 2018.

111.    While employed by Defendants, Plaintiff Elsy Santos generally worked more than

40 hours per week. From March 20, 2014 until about November 2014, Plaintiff Elsy Santos

generally worked seven 8-hour shifts per week, amounting to a total of about 56 hours per week,

but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all

hours worked in excess of 40 her week. From about November 2014 until about October 2015,

Plaintiff Elsy Santos worked 8- or 12-hour shifts, though occasionally, she worked a 24-hour

shift. When she worked 24-hour shifts, Defendants failed to pay her overtime at a rate of one and

one-half her regular rate for all hours worked in excess of 40 each week. From about October 2015 until about August 2016, Plaintiff Elsy Santos typically worked four 24-hour shifts per week, amounting to a total of about 96 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week. From about August 2016 until about March 2017, Plaintiff Elsy Santos typically worked six 24-hour shifts per week, amounting to a total of about 144 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week. From about March 2017 until the end of her employment with Avondale, in about January 2018, Plaintiff Elsy Santos generally worked four 24-hour shifts per week, amounting to a total of about 96 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week.

112.    For example, from May 4, 2014 to May 10, 2014, Plaintiff Elsy Santos worked 56 hours, but was paid her first 40 hours at regular rate of $10.00 per hour and her remaining 16 overtime hours at an improper rate of $12.00 per hour; from October 25, 2015 to October 31, 2015, Plaintiff Elsy Santos worked four 24-hour shifts for a total of 96 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week; from December 11, 2016 until December 17, 2016, Plaintiff Elsy Santos worked six 24-hour shifts for a total of 144 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week; and from January 14, 2018 until January 20, 2018, Plaintiff Elsy Santos worked four 24-hour shifts for a total of 96 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week.

113.    Defendants failed to provide Plaintiff Elsy Santos with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

114.    Throughout Plaintiff Elsy Santos's employment with Avondale, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Genesis Ruiz

115.    Plaintiff Genesis Ruiz worked for Defendants as a home attendant from approximately June 1, 2015 through June 6, 2016.

116.    While employed by Defendants, Plaintiff Genesis Ruiz generally worked between five and seven 24-hour shifts per week, amounting to a total of 120 to 168 hours per week, but Defendants failed to pay her overtime at one and one-half times her regular rate for all hours worked in excess of 40 each week.

117.    For example, from on or about June 1, 2015, to on or about August 1, 2015, Plaintiff Genesis Ruiz worked five 24-hour shifts each week for Defendants, totaling 120 hours worked each week, but Defendants failed to pay her at one and one-half times her regular rate for all hours worked in excess of 40 each week. From on or about August 2, 2015, to on or about March 1, 2016, Plaintiff Genesis Ruiz worked seven 24-hour shifts each week for Defendants, totaling 168 hours worked each week, but Defendants failed to pay her at one and one-half times her regular rate for all hours worked in excess of 40 each week. From on or about March 2, 2016,

to on or about June 6, 2016, Plaintiff Genesis Ruiz worked five 24-hour shifts each week for Defendants, totaling 120 hours worked each week, but Defendants failed to pay her at one and one-half times her regular rate for all hours worked in excess of 40 each week.

118.    Defendants failed to provide Plaintiff Genesis Ruiz with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

119.    Throughout Plaintiff Genesis Ruiz's employment with Defendants, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Juan Dolmo

120.    Plaintiff Juan Dolmo has worked for Defendants as a home attendant from approximately January 11, 2015 to the present.

121.    While employed by Defendants, Plaintiff Juan Dolmo generally worked in excess of 40 hours each week, but Defendants failed to pay him overtime at one and one-half times his regular rate for all hours worked in excess of 40 each week.

122.    From at least on or about September 4, 2016, to on or about October 31, 2019 Plaintiff Juan Dolmo generally worked for Defendants between five and six shifts of 24-hours, and sometimes more, each week, for a total of 120 to 144 hours each week, but Defendants failed to pay him at one and one-half times his regular rate of pay for all hours worked in excess of 40 each week. For example, from June 5, 2016, to June 11, 2016, Plaintiff Juan Dolmo worked six

24-hour shifts for Defendants, but Defendants failed to pay him at one and one-half times his regular rate of pay for all hours worked in excess of 40 each week; and from July 23, 2017, to July 29, 2017, Plaintiff Juan Dolmo worked five shifts of 24-hours for Defendants, but Defendants failed to pay him at one and one half times his regular rate for all hours worked in excess of 40 that week.

123.    From on or about November 1, 2019 to March 13, 2020, Plaintiff Juan Dolmo did not work for Defendants.

124.    From March 14, 2020 to the present, Plaintiff Juan Dolmo has worked four 24-hour shifts for Defendants each week, totalling 96 hours worked each week, but Defendants have failed to pay him at one and one-half times his regular rate for all hours worked in excess of 40 each week.

125.    Defendants failed to provide Plaintiff Juan Dolmo with a notice of pay rate in his primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether he would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

126.    Throughout Plaintiff Juan Dolmo's employment with Defendants, Defendants failed to furnish him with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Apolonia Reyes

127.    Plaintiff Apolonia Reyes worked for Defendants as a home attendant from approximately June 2015 to approximately July 2, 2016.

128.     While employed by Defendants, Plaintiff Apolonia Reyes generally worked more than 40 hours per week. With the exception of her last two weeks of work with Defendants, during which Plaintiff Apolonia Reyes did not work shifts in excess of 40 hours per week, Plaintiff Apolonia Reyes worked three 24-hour shifts, amounting to a total of about 72 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week.

129.     Defendants failed to provide Plaintiff Apolonia Reyes with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

130.     Throughout Plaintiff Apolonia Reyes's employment with Defendants, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Rosa Pinales

131.     Plaintiff Rosa Pinales began working for Defendants as a home attendant in approximately June 2019 and continues working for Defendants.

132.     During her employment with Defendants, Plaintiff Rosa Pinales has generally worked four, though occasionally five, 24-hour shifts per week, amounting to a total of about 96 or 120 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week.

133.     For example, from June 16, 2019 to June 22 2019, Plaintiff Rosa Pinales worked four 24-hour shifts for a total of 96 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week.

134.     Defendants failed to provide Plaintiff Rosa Pinales with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

135.     Throughout Plaintiff Rosa Pinales's employment with Defendants, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Alba Flores

136.     Plaintiff Alba Flores worked for Defendants as a home attendant from approximately May 2015 to approximately June 2018.

137.     While employed by Defendants, Plaintiff Alba Flores generally worked more than 40 hours per week. From about May 2015 until about January 2016, Plaintiff Alba Flores worked three 24-hour shifts per week and an additional 8-hour shift per week, amounting to a total of 80 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week. From about January 2016 until about June 2018, Plaintiff Alba Flores worked four 24-hour shifts per week, amounting to a total of 96

hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week.

138.    Plaintiff Alba Flores was not paid at all for about her last 40 hours of work with Defendants, in about June 2018.

139.    Defendants failed to provide Plaintiff Alba Flores with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

140.    Throughout Plaintiff Alba Flores's employment with Defendants, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Francisca Medina

141.    Plaintiff Francisca Medina worked for Defendants as a home attendant from about 2010 through about May 2017.

142.    While employed by Defendants, Plaintiff Francisca Medina generally worked more than 40 hours per week. From at least March 20, 2014 through the end of her employment with Defendants, in about May 2017, Plaintiff Francisca Medina generally worked about four to six, though occasionally seven, 24-hour shifts per week, amounting to a total of about 96 to 144 hours per week, and occasionally up to 168 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week.

143.    For example, from April 27, 2014 to May 3, 2014, Plaintiff Francisca Medina worked five 24-hour shifts for a total of 120 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week; and from June 22, 2014 to June 28, 2014, Plaintiff Francisca Medina worked six 24-hour shifts for a total of 144 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week.

144.    Defendants failed to provide Plaintiff Francisca Medina with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

145.    Throughout Plaintiff Francisca Medina's employment with Defendants, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Diana Arriola

146.    Plaintiff Diana Arriola worked for Defendants as a home attendant from approximately March 2013 to approximately August 2018.

147.    While employed by Defendants, Plaintiff Diana Arriola generally worked more than 40 hours per week. From about March 2013 until about January 2014, Plaintiff Diana Arriola worked three or four 24-hour shifts per week, amounting to a total of 72 to 96 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for

all hours worked in excess of 40 each week. From approximately January 2014 until about June 2014, Plaintiff Diana Arriola worked four 24-hour shifts per week, amounting to a total of 96 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week. From June 2014 until about June 2015, Plaintiff Diana Arriola worked three 24-hour shifts per week, amounting to a total of about 72 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week.

148.    Defendants failed to provide Plaintiff Diana Arriola with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

149.    Throughout Plaintiff Diana Arriola's employment with Defendants, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Lidia Gotay

150.    Plaintiff Lidia Gotay began working for Defendants as a home attendant in approximately 2015 and continues working for Defendants.

151.    During her employment with Defendants, Plaintiff Lidia Gotay has consistently worked more than 40 hours per week. From about April 2015 until about October 2015, Plaintiff Lidia Gotay worked four 24-hour shifts per week, amounting to 96 hours per week, but Defendants' failed to pay her overtime at a rate of one and one-half her regular rate for all hours

worked in excess of 40 each week. From about October 2015 until about January 2016, Plaintiff Lidia Gotay worked three 24-hour shifts per week, amounting to about 72 hours per week, but Defendants' failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week. From about January 2016 until about October 2018, Plaintiff Lidia Gotay worked about four or five 24-hour shifts per week, though occasionally more, amounting to about 96 to 120 hours per week, but Defendants' failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week. From about October 2018 through the present, Plaintiff Lidia Gotay has worked three 24-hour shifts per week, amounting to 72 hours per week, but Defendants' failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week.

152.     For example, from January 10, 2016 to January 16, 2016, Plaintiff Lidia Gotay worked five 24-hour shifts for a total of 120 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week.

153.     Defendants failed to provide Plaintiff Lidia Gotay with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

154.     Throughout Plaintiff Lidia Gotay's employment with Defendants, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Laura Laboriel

155.    Plaintiff Laura Laboriel began working for Defendants as a home attendant on or about September 28, 2013 and continues working for Defendants.

156.    While employed by Defendants, Plaintiff Laura Laboriel generally worked more than 40 hours per week. Throughout her employment with Defendants, Plaintiff Laura Laboriel has generally worked four or five 24-hour shifts per week, amounting to a total of about 96 to 120 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week.

157.    For example, from December 11, 2016 to December 17, 2016, Plaintiff Laura Laboriel worked five 24-hour shifts for a total of 120 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week; and from December 3, 2017 until December 9, 2017, Plaintiff Laura Laboriel worked four 24-hour shifts for a total of 96 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week.

158.    Defendants failed to provide Plaintiff Laura Laboriel with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

159.    Throughout Plaintiff Laura Laboriel's employment with Defendants, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the

number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Dunia Flores

160.    Plaintiff Dunia Flores worked for Defendants as a home attendant from approximately February 2016 to approximately January 2018.

161.    While employed by Defendant, Plaintiff Dunia Flores generally worked more than 40 hours per week. Throughout her employment, Plaintiff Dunia Flores typically worked about three or four 24-hour shifts per week, though sometimes more than that, amounting to a total of about 72 to 96 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week.

162.    For example, from October 30, 2016 to November 5, 2016, Plaintiff Dunia Flores worked four 24-hour shifts for a total of 96 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week; and from November 19, 2017 until November 25, 2017, Plaintiff Dunia Flores worked three 24-hour shifts for a total of 72 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week.

163.    Throughout Plaintiff Dunia Flores's employment with Defendants, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Margarita Benedith

164.    Plaintiff Margarita Benedith worked for Defendants as a home attendant from on or about October 27, 2014 to about February 2016.

165.    While employed by Defendants, Plaintiff Margarita Benedith generally worked more than 40 hours per week. During her entire employment with Defendants, Plaintiff Margarita Benedith typically worked about four 24-hour shifts per week, amounting to about 96 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week.

166.    For example, from September 27, 2015 to October 3, 2015, Plaintiff Margarita Benedith worked four 24-hour shifts for a total of 96 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week.

167.    Defendants failed to provide Plaintiff Margarita Benedith with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

168.    Throughout Plaintiff Margarita Benedith's employment with Defendants, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Beberlin Flores

169.    Plaintiff Beberlin Flores worked for Defendants as a home attendant from about April 2014 to about May 2017.

170.    While employed by Defendants, Plaintiff Beberlin Flores generally worked more than 40 hours per week. Throughout her employment with Defendants, Plaintiff Beberlin Flores typically worked about three, though occasionally four, 24-hour shifts per week, along with additional non-24-hour shifts that totaled about 12 hours occurring about every two weeks, amounting to about 72 or 84 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week.

171.    For example, from March 29, 2015 to April 4, 2015, Plaintiff Beberlin Flores worked three 24-hour shifts, along with additional hourly shifts that totaled 13 hours for a weekly total of 85 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week; and from February 14, 2016 until February 20, 2016, Plaintiff Beberlin Flores worked three 24-hour shifts for a total of 72 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week.

172.    Defendants failed to provide Plaintiff Beberlin Flores with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

173.    Throughout Plaintiff Beberlin Flores's employment with Defendants, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the

number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

Keidy Marin

174.    Plaintiff Keidy Marin worked for Defendants as a home attendant from about January 2016 to on or about December 31, 2016.

175.    While employed by Defendants, Plaintiff Keidy Marin oftentimes worked more than 40 hours per week. Beginning on or about April 24, 2016 until the end of her employment with Defendants, Plaintiff Keidy Marin generally worked about three 24-hour shifts per week, amounting to about 72 hours per week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 each week.

176.    For example, from May 22, 2016 to May 28, 2016, Plaintiff Keidy Marin worked three 24-hour shifts for a total of 72 hours worked that week, but Defendants failed to pay her overtime at a rate of one and one-half her regular rate for all hours worked in excess of 40 that week.

177.    Defendants failed to provide Plaintiff Keidy Marin with a notice of pay rate in her primary language at the time of hiring or thereafter that provided the rate or rates of pay and basis thereof, whether she would be paid by the hour, shift, or day, and other information required to be included pursuant to NYLL § 195(1).

178.    Throughout Plaintiff Keidy Marin's employment with Defendants, Defendants failed to furnish her with a statement with every payment of wages that listed the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, the number of overtime hours worked, and other information required to be included pursuant to NYLL § 195(3).

## FIRST CAUSE OF ACTION
### (FLSA - Minimum Wage Violations)

179.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

180.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203.

181.    Despite the fact that Plaintiffs worked 24-hour shifts, Defendants only compensated them for 13 of those hours, which brought Plaintiffs' hourly wage rate below the applicable minimum wage, in violation of 29 U.S.C. § 206(a).

182.    Defendants also failed to pay Plaintiff Alba Flores for approximately forty hours of work performed in approximately June 2018, and Plaintiff Oneida Gotay for approximately twelve hours of work performed in approximately December 2017, in violation of 29 U.S.C. § 206(a).

183.    Defendants' failure to pay Plaintiffs the lawful minimum wages was willful.

184.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages and an equal amount of liquidated damages, as well as reasonable attorneys' fees and costs of the action.

## SECOND CAUSE OF ACTION
### (NYLL – Minimum Wage Violations)

185.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

186.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of NYLL, including but not limited to NYLL §§ 2, 190 and 651.

187.    Despite the fact that Plaintiffs worked 24-hour shifts, Defendants only compensated them for 13 of those hours, which brought the hourly wage rate below the applicable New York State minimum wage, in violation of NYLL § 652.

188.    Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

### THIRD CAUSE OF ACTION
#### (NYLL – Unpaid Wages)

189.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

190.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of NYLL, including but not limited to NYLL §§ 2, 190 and 651.

191.    Despite the fact that Plaintiffs worked 24-hour shifts, Defendants only compensated them for 13 of those hours, leaving the remaining 11 unpaid, in violation of NYLL §§ 191 and 193.

192.    Defendants failure to pay Plaintiffs their regular wages for the 11 unpaid hours of work constituted unlawful deductions to wages pursuant to NYLL § 193, and for which Plaintiffs are entitled to recover their unpaid regular wages, liquidated damages, attorneys' fees, costs, and interest.

193.    Plaintiffs did not receive five hours of uninterrupted sleep and three hours of meal break time during their 24-hour shifts.

194.    Defendants did not furnish adequate sleeping facilities for Plaintiffs.

195.    Additionally Defendants failed to pay Plaintiff Alba Flores for approximately forty hours of work that she performed in approximately June 2018 and Plaintiff Oneida Gotay

for approximately twelve hours of work performed in approximately December 2017, in violation of NYLL §§ 191 and 193.

196.    Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

## FOURTH CAUSE OF ACTION
### (FLSA – Overtime Violations)

197.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

198.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203.

199.    Defendants failed to pay Plaintiffs overtime wages at the lawfully required rate of at least one-and-a-half times the applicable minimum wage or regular wage rate, for each hour worked in excess of forty hours per week, in violation of 29 U.S.C. § 207, 29 C.F.R. §778.5 and 29 C.F.R. §778.315.

200.    Defendants' failure to pay Plaintiffs their lawful overtime wages was willful.

201.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages and an equal amount of liquidated damages, as well as reasonable attorneys' fees and costs of the action.

## FIFTH CAUSE OF ACTION
### (NYLL – Overtime Violations)

202.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

203.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law, including but not limited to NYLL §§ 2 and 651.

204.    Defendants failed to pay Plaintiffs overtime wages at the lawfully required rate of at least one-and-a-half times the applicable minimum wage, for each hour worked in excess of forty hours per week, in violation of the NYLL and accompanying regulations.

205.    Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

## SIXTH CAUSE OF ACTION
### (NYLL – Spread-of-Hours Violations)

206.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

207.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law, including but not limited to NYLL §§ 2 and 651.

208.    Pursuant to NYLL, Defendants were and are required to pay each Plaintiff one hour of pay at the basic minimum wage rate, in addition to wages otherwise due, for each day of work in which that Plaintiff's spread-of-hours exceeded ten and/or Plaintiffs worked a split shift.

209.    Plaintiffs worked shifts during which their spread-of-hours exceeded ten and/or in which they worked a split shift, but Defendants failed to pay the additional one hour of pay at the basic minimum wage rate, in addition to wages otherwise due, for each day of work in which that Plaintiff's spread-of-hours exceeded ten or in which Plaintiffs worked a split shift.

210.    Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally during the periods in which they were employers, their spread-

of-hours wages, liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

## SEVENTH CAUSE OF ACTION
### (NYLL – Notice Violations)

211.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

212.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law, including but not limited to NYLL §§ 2 and 651.

213.    Defendants violated NYLL § 195(1)(a) by not providing Plaintiffs Celestina Mejia, Oneida Gotay, Paula Figueroa, Suyapa Moreira Cayetano, Elsy Santos, Genesis Ruiz, Juan Dolmo, Apolonia Reyes, Rosa Pinales, Alba Flores, Francisca Medina, Diana Arriola, Lidia Gotay, Laura Laboriel, Margarita Benedith, Beberlin Flores, and Keidy Marin with the proper notice at the time of hiring or thereafter.

214.    Plaintiffs are each entitled to recover from Defendants the statutory maximum of five thousand dollars for Defendants' violations of Section 195(1)(a), interest, reasonable attorneys' fees, and costs of the action.

## EIGHTH CAUSE OF ACTION
### (NYLL – Wage Statement Violations)

215.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

216.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law, including but not limited to NYLL §§ 2 and 651, and Plaintiffs were not exempt from overtime compensation as established by New York state law and/or regulation.

217.     Defendants violated NYLL § 195(3) by failing to furnish Plaintiffs with a statement with every payment of wages listing, inter alia, the regular hourly rate or rates of pay, the overtime rate or rates of pay, the number of regular hours worked, and the number of overtime hours worked.

218.     Plaintiffs are each entitled to recover from Defendants damages up to a statutory maximum of five thousand dollars for Defendants' violations of NYLL § 195(3), reasonable attorneys' fees, and costs of the action.

### NINTH CAUSE OF ACTION
**(Breach of Contract)**

219.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

220.     Upon information and belief, Defendants entered into contract(s) with government agencies that required Defendants to pay Plaintiffs wages as required by NY Public Health Law § 3614-c.

221.     Upon information and belief, the schedule of prevailing rates of wages and benefits to be paid all workers furnishing labor pursuant to the contracts was included in and formed a part of the contract(s).

222.     Beginning on or about May 20, 2014, Plaintiffs furnished labor to Defendants in furtherance of Defendants' performance of the contract(s).

223.     Defendants willfully paid Plaintiffs less than the prevailing rates of wages and benefits to which Plaintiffs were entitled and breached its obligation to pay Plaintiffs all wages they were due as required by NY Public Health Law § 3614-c.

224.     Upon information and belief, at all times relevant to this complaint, Defendants were required to certify and did certify that they paid Plaintiffs wages as required by NY Public Health Law § 3614-c.

225.     Plaintiffs, as third-party beneficiaries of Defendants' contract(s) with government agencies to pay wages as required by the NY Health Care Worker Wage Parity Act, are entitled to relief for the breach of this contraction obligation, plus interest.

## TENTH CAUSE OF ACTION
### (Breach of Contract)

226.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

227.     Upon information and belief, the City Service Contract(s) entered into by Defendants contained provisions requiring the payment of living wages and health benefits or health benefit supplements to Plaintiffs.

228.     Defendants breached the City Service Contract(s) by willfully failing to pay Plaintiffs the living wages and health benefits or health benefit supplements for all labor performed.

229.     Further, NYC Admin. Code § 6-109 specifically requires, as a matter of law, that language mandating compliance with NYC Admin. Code § 6-109 be included with and form a part of the City Service Contract(s).

230.     Further, upon information and belief, each and every City Service Contract(s) contained a provision, in identical or similar language, stating that "each and every provision of law required to be inserted in this Agreement shall be and is inserted herein. Furthermore, it is hereby stipulated that each and every provision is to be deemed to be inserted herein."

231.    By reason of this breach of the City Service Contract(s), Defendants are liable to Plaintiffs for an amount to be determined at trial, plus interest.

## ELEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

232.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

233.    Upon information and belief, Defendants have been unjustly enriched at the expense of Plaintiffs by failing to pay Plaintiffs the wages due to them under the New York Home Care Worker Wage Parity Act, NY Public Health Law § 3614-c, and/or the Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16).

234.    Defendants accepted the benefits of the work Plaintiffs performed at Plaintiffs' own expense, and it is inequitable for Defendants to reap the benefits of Plaintiffs' labor without paying all wages due under the New York Home Care Worker Wage Parity Act, NY Public Health Law § 3614-c, and/or the Fair Wages for New Yorkers Act, New York City Admin. Code § 6-109(16).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be granted:

A.    Declaring Defendants' conduct complained of herein to be in violation of the FLSA and NYLL and their respective regulations;

B.    Awarding Plaintiffs their unpaid wages, unpaid minimum wages, overtime wages, and spread-of-hours wages due under the FLSA and NYLL;

C.    Awarding Plaintiffs damages for notice violations under the NYLL;

D.    Awarding Plaintiffs damages for Defendants' breach of contract(s) with New York State and New York City and Defendants' unjust enrichment due to those breaches;

E.      Awarding Plaintiffs liquidated damages;

F.      Award Plaintiffs prejudgment interest;

G.      Awarding Plaintiffs the costs of this action, together with reasonable attorneys'

fees; and

H.      Awarding Plaintiffs such other relief as this Court considers necessary and proper.

Dated:  Queens, New York
        April 7, 2020

                                Respectfully submitted,

                                _____
                                Thomas J. Lamadrid
                                EISNER & DICTOR, P.C.
                                39 Broadway, Suite 1540
                                New York, NY 10006
                                P: (212) 473-8700
                                F: (212) 473-8705
                                thomas@eisnerdictor.com


                                Thomas J. Power
                                tpower@catholicmigration.org
                                Magdalena Barbosa
                                mbarbosa@catholicmigration.org
                                CATHOLIC MIGRATION SERVICES
                                47-01 Queens Boulevard, Ste. 203
                                Sunnyside, NY 11104
                                P: (347) 472-3500
                                F: (347) 472-3501

                                Attorneys for Plaintiffs